**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **DARRYL R. DUNCAN,** | ) | |
| **No. B79384,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 14-cv-01167-MJR** |
| | ) | |
| **PAT QUINN,  et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM AND ORDER**

**REAGAN, Chief Judge:**

      Plaintiff Darryl R. Duncan, an inmate in Pinckneyville Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983, after (1) being assaulted multiple times by prison staff; (2) denied treatment for the resulting injuries and other chronic medical problems; and (3) facing a wide array of impediments to his finding acceptable placement at a halfway house or other location so that he can be released from prison.  This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A, and for consideration of Plaintiff's request for an "Emergency Temporary Restraining Order" ("TRO").  Because Plaintiff seeks a TRO, the Court will immediately take up the case. *See Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680 (7th Cir. 2012).

      The request for a TRO will be simultaneously considered along with the required preliminary review of the complaint pursuant to 28 U.S.C. §1915A, and motion for leave to proceed as a pauper (Doc. 2).  These three matters are inextricably intertwined.

<u>**Relevant Legal Standards**</u>

<u>**Pleading Standard**</u>

Of course, without a viable complaint the Court lacks jurisdiction to proceed.[1]  Section

1915A provides:

> (a) **Screening.**– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal.**– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
>> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
>> (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact."

*Neitzke v. Williams*, 490 U.S. 319, 325 (1989).   Frivolousness is an objective standard that refers

to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton,* 209 F.3d

1025, 1026-27 (7th Cir. 2000).  An action fails to state a claim upon which relief can be granted

if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The claim of entitlement to relief must

cross "the line between possibility and plausibility.  *Id*. at 557.   At this juncture, the factual

allegations of the *pro se* complaint are to be liberally construed.  *See Rodriguez v. Plymouth*

*Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

---

[1] The Federal Rules of Civil Procedure provide that "[a] civil action is commenced by filing a complaint with the court."  FED.R.CIV.P. 3.  In other words, "the first step in the action is the filing of the complaint." *Id*., Advisory Committee Notes, 1937 Adoption.  Without a complaint, the Court cannot ascertain the basis for jurisdiction.  *See Bell v. Hood*, 327 U.S. 678, 681-82 (1946); *Greater Chicago Combine and Ctr., Inc. v. City of Chicago*, 431 F.3d 1065, 1069-70 (7th Cir. 2005).

**Injunctive Relief**

A TRO is an order issued without notice to the party to be enjoined that may last no more than 14 days. FED. R. CIV. P. 65(b)(2).  A TRO may issue without notice *only* if:

(A)  specific facts in an affidavit or a verified complaint clearly show that *immediate and irreparable injury, loss, or damage* will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

FED.R.CIV.P. 65(b)(1) (emphasis added). Such injunctive relief is also warranted "to prevent a substantial risk of serious injury from ripening into actual harm."  *Farmerv. Brennan*, 511 U.S. 825, 845 (1994).

**Pauper Status**

The $400 filing fee has not been paid.  Rather, Plaintiff seeks leave to proceed *in forma pauperis* (Doc. 2).  It appears that Plaintiff is unable to pay the full filing fee at this time.  Although payment may be made in installments, Plaintiff must overcome the fact that he has previously filed three cases that count as "strikes" under 28 U.S.C. § 1915(g).

The statute that permits a litigant to proceed *in forma pauperis*, 28 U.S.C. § 1915, further provides:

[i]n no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, *unless the prisoner is under imminent danger of serious physical injury*.

28 U.S.C. § 1915(g) (emphasis added).

Court documents are public records of which the Court can take judicial notice.  *See Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994).  Review of documents filed in the electronic docket of this Court, and on the Public Access to Court Electronic Records

("PACER") website (www.pacer.gov), discloses that Plaintiff Duncan has already had the following three cases dismissed as frivolous or for failure to state a claim upon which relief may be granted: *Duncan v. Walker*, Case No. 08-cv-315-JPG (S.D. Ill. dismissed Mar. 11, 2009); *Duncan v. Quinn*, Case No. 10-cv-3124-HAB (C.D. Ill. dismissed Jun. 7, 2010); and *Duncan v. Quinn*, Case No. 14-cv-604-JPG (S.D. Ill. Jun. 4, 2014).

## Imminent Danger

The threshold for overcoming the three-strikes barrier and for warranting a TRO are very similar, but not identical. However, it must be kept in mind that the three-strikes barrier is a prerequisite, in that it determines which claims, if any, may be considered without payment of the full filing fee. The United States Court of Appeals for the Seventh Circuit has explained that "imminent danger" within the meaning of 28 U.S.C. § 1915(g) requires a "real and proximate" threat of serious physical injury to a prisoner. *Ciarpaglini v. Saini*, 352 F.3d 328, 330 (7th Cir. 2003) (citing *Lewis v. Sullivan*, 279 F.3d 526, 529 (7th Cir. 2002)). In general, courts "deny leave to proceed [as a pauper] when a prisoner's claims of imminent danger are conclusory or ridiculous." *Id*. at 331 (citing *Heimermann v. Litscher*, 337 F.3d 781, 782 (7th Cir. 2003)). Additionally, "[a]llegations of past harm do not suffice" to show imminent danger; rather, "the harm must be imminent or occurring at the time the complaint is filed," and when prisoners "allege only a past injury that has not recurred, courts deny them leave to proceed [as a pauper]." *Id*. at 330 (citing *Abdul-Wadood v. Nathan*, 91 F.3d 1023 (7th Cir. 1996)).

Plaintiff's dissatisfaction with prison officials' efforts to assist him in securing a host site so that he can be paroled does not, by itself, present an imminent risk of serious physical injury.

Plaintiff's allegations of *past* assaults by prison guards also do not involve any sort imminent risk of serious physical injury. In August 2014, Plaintiff was handcuffed and dragged,

despite guards knowing that he walks with a cane.  He was subsequently forced to sleep on the floor, where he was bitten by spiders.  Plaintiff was again handcuffed and dragged in September 2014, reportedly resulting in nerve damage, bruises and pain.  There is no suggestion that the assaults are ongoing.

The complaint also contains allegations that "staff" continually threatens Plaintiff, and that "they" were going to kill him.  These bare assertions are insufficient to clear the three-strikes hurdle or support a TRO.   However, according to the complaint, in September, one of the assailants, Officer Womack, allegedly threatened that he or one of his coworkers was going to kill Plaintiff.  Although the threat does not appear to be imminent, the Court does not take death threats lightly.

A review of the exhibits attached to the complaint reveals that Plaintiff has requested an emergency transfer and/or release on parole, but there is no indication that he has ever requested protective custody.  Plaintiff's most recent grievances indicate that his concern for his safety is secondary to more trivial concerns.   For example, on October 12, 2014, Plaintiff filed a grievance regarding missing personal property—which he specifically characterized as an emergency.   The grievance concluded with a description of Wagner's death threat.   The requested relief was "I want my 2 deodorants, 2 bars of soap and an immediate transfer for my safety and an investigation" (Doc.. 1-1, p. 11).   On October 13, Plaintiff filed a grievance because his food tray was missing a waffle.  The grievance also concluded with a description of Womack's threat and requested a transfer and investigation (Doc. 1-1, p. 12).   It appears quite clear that Plaintiff is attempting to leverage his way into release on parole any way he can.

In any event, mere threatening words, without more, generally do not amount to an Eighth Amendment violation. *See Dobbey v. Ill. Dep't of Corrections,* 574 F.3d 443, 446 (7th

Cir. 2009) (displaying a noose did not amount to an Eighth Amendment violation); *DeWalt v. Carter,* 224 F.3d 607, 612 (7th Cir. 2000).   Thus, Womack's threat, without more, is not enough to support a viable Eighth Amendment claim, and as such is not grounds for a TRO.

The complaint and attached documentation do present a colorable Eighth Amendment claim regarding deliberate indifference to serious medical needs.   Plaintiff is being denied treatment and pain medication for the injuries he sustained after being assaulted in August and September, as well as medication for hypertension, gout and asthma.   The Eighth Amendment to the United States Constitution protects prisoners from being subjected to cruel and unusual punishment.   U.S. CONST., amend. VIII.   *See also Berry v. Peterman*, 604 F.3d 435, 439 (7th Cir. 2010).   Eighth Amendment protection extends to conditions of confinement that pose a substantial risk of serious harm, including health and safety.   *See Estate of Miller, ex rel. Bertram v. Tobiasz*, 680 F.3d 984 (7th Cir. 2012). Prison officials can violate the Eighth Amendment's proscription against cruel and unusual punishment when their conduct demonstrates "deliberate indifference to serious medical needs of prisoners."   *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).   The Court will even go so far as to say at this early juncture that the claim involves a real and proximate threat of serious physical injury, which gets Plaintiff over the three-strikes bar.  However, the bar for a TRO is higher.

A TRO may issue without notice only if there is a clear showing that immediate and *irreparable* injury, loss or damage will result to the movant before the adverse party can be heard in opposition.   FED.R.CIV.P. 65(b)(1)(A).   The complaint does not offer any elaboration regarding any of Plaintiff's medical ailments, what adverse consequences are affecting him or are likely to impact him as a result of the alleged denial of medical care, let alone any basis for concluding he will suffer irreparable injury if a TRO is not granted.   It is also noted that an

October 2, 2014, memo from the health care administrator indicates that Plaintiff refused lab tests on September 30, 2014 (*see* Doc. 1-1, p. 35), although Plaintiff disputes that fact (*see* Doc. 1, p. 7).  For these reasons, no TRO will be granted.

Plaintiff's Eighth Amendment claim regarding being denied treatment and pain medication for the injuries he sustained after being assaulted in August and September, and being denied medication for hypertension, gout and asthma will be allowed to proceed—determining against whom requires additional analysis.

## Personal Involvement

Section 1983 creates a cause of action based on personal liability and predicated upon fault.  "[T]o be liable under [Section] 1983, an individual defendant must have caused or participated in a constitutional deprivation."  *Pepper v. Village of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005) (citations omitted).  A prison official may be liable "only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it."  *Farmer*, 511 U.S. at 847.  Proving deliberate indifference requires more than a showing of negligent or even grossly negligent behavior.  *Id*. at 835.  Rather, the corrections official must have acted with the equivalent of criminal recklessness.  *Id*. at 836–37.

Because personal involvement is required for liability to attach, the *respondeat superior* doctrine—supervisor liability—is not applicable to Section 1983 actions.  *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001)).  Allegations that senior officials were personally responsible for creating the policies, practices and customs that caused a constitutional deprivation can, however, suffice to demonstrate personal involvement for purposes of Section 1983 liability.

*See Doyle v. Camelot Care Centers, Inc.,* 305 F.3d 603, 615 (7th Cir. 2002).  Also, normally the warden of the prison, in his or her official capacity, is the proper defendant when injunctive relief is sought, regardless of personal involvement in the alleged unconstitutional act.  *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011).

Seven named defendants are linked to the alleged denial of medical care:  Governor Pat Quinn; Director of the Illinois Department of Corrections S.A. Godinez, Administrative Review Board member Debbie Krauer; Warden Thomas A. Spiller; Assistant Warden Edwards; Assistant Warden Norman; and Pinckneyville Medial Director Christine Brown.

It is alleged that Quinn, Godinez, Krauer and Spiller were informed of Plaintiff's plight via the grievance process.  The mere fact that those defendants may hold top administrative positions does not lead to liability.  More specifically, liability does not attach to those whose involvement in an alleged constitutional violation is limited to addressing grievances on the subject.  *See George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007); *Johnson v. Snyder*, 444 F.3d 579, 584 (7th Cir. 2006).  Furthermore, such high level officials are entitled to rely upon prison medical staff to provide good medical care.  *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009).  Because Spiller is the Warden of Pinckneyville, he will remain a defendant to the Eighth Amendment medical care claim in his official capacity, relative to the general prayer for injunctive relief.

With respect to Assistant Warden Norman, who is in charge of security, the complaint indicates that he received oral and written notice of the threat against Plaintiff and the failure to afford him needed medical care, but he did nothing.  Again, even though Norman may have received notice in a more personal fashion, he is entitled to rely upon prison medical staff to

provide good medical care. *Burks*, 555 F.3d at 595. There is no other allegation of involvement that would cause liability to attach.

According to the complaint, Assistant Warden Edwards oversees the provision of health care at Pinckneyville. Plaintiff orally informed him of the denial of medical care. Therefore, out of an overabundance of caution, he will remain a defendant to the Eighth Amendment medical care claim in both his individual and official capacities. For the same reasons, Health Care Administrator Christine Brown will remain a defendant to the Eighth Amendment claim in her individual and official capacities.

In summary, Plaintiff may proceed *in forma pauperis* on a single claim:

**Count 1: Defendants Edwards and Brown, in their individual capacities, were deliberately indifferent to Plaintiff's serious medical needs in violation of the Eighth Amendment; Defendants Spiller, Edwards and Brown, are defendants to this claim in their official capacities for purposes of injunctive relief *only*.**

Relative to Count 1, for the reasons stated, Defendants Quinn, Godinez, Krauer and Norman will be dismissed without prejudice in both their official and individual capacities; the individual capacity claim against Defendant Spiller will be dismissed. Plaintiff's motion for a temporary restraining order relative to Count 1 will be denied.

Although Plaintiff may pay the filing fee and proceed on his other claims, they cannot proceed in this action. In *George v. Smith*, 507 F.3d 605 (7th Cir. 2007), the Seventh Circuit emphasized that unrelated claims against different defendants belong in separate lawsuits, "not only to prevent the sort of morass" produced by multi-claim, multi-defendant suits "but also to ensure that prisoners pay the required filing fees" under the Prison Litigation Reform Act. *George*, 507 F.3d at 607, (citing 28 U.S.C. § 1915(b), (g)). For example, even though the alleged assault may have caused some of Plaintiff's untreated medical issues, the defendants and

legal issues are entirely separate.  Plaintiff's concerns about placement for parole are entirely unconnected to his medical care.

Rather than actually sever the claims into separate cases and await payment of the filing fee for each case, these other possible claims will be dismissed.  There is no apparent statute of limitations problem to preclude dismissal, as opposed to severance.  Furthermore, the Court has had to delve into all of the allegations presented *only* in order to sort out if and how to proceed relative to the three-strike problem and motion for TRO.  Therefore, with the exception of Count 1, all claims against all defendants will be dismissed without prejudice.  If Plaintiff desires to proceed on any of the dismissed claims, he must initiate a separate action(s) and pay the filing fee (or attempt to secure pauper status as he deems appropriate).

## Disposition

**IT IS HEREBY ORDERED** that, for the reasons stated, Plaintiff's motion for leave to proceed *in forma pauperis* (Doc. 2) is **GRANTED IN PART AND DENIED IN PART**, in that Plaintiff may proceed as a pauper on the following claim:

> **Count 1: Defendants Edwards and Christine Brown, in their individual capacities, were deliberately indifferent to Plaintiff's serious medical needs in violation of the Eighth Amendment; Defendants Spiller, Edwards and Brown, are defendants to this claim in their official capacities for purposes of injunctive relief *only*.**

The initial partial filing fee and payment scheme will be set forth in a separate order.

**IT IS FURTHER ORDERED** that, relative to the Eighth Amendment medical care claim asserted in Count 1, Defendants **PAT QUINN**, **S.A. GODINEZ**, **DEBBIE KRAUER**, and **NORMAN** are **DISMISSED without prejudice** in their official and individual capacities; the individual capacity claim against Defendant **THOMAS SPILLER** is **DISMISSED without prejudice**.

**IT IS FURTHER ORDERED** that **ALL OTHER CLAIMS AGAINST ALL OTHER DEFENDANTS are DISMISSED without prejudice**.

**IT IS FURTHER ORDERED** that Plaintiff's motion for a temporary restraining order is **DENIED** in all respects.

The Clerk of Court shall prepare for Defendants **EDWARDS and CHRISTINE BROWN**, in their individual capacities, and Defendant **THOMAS SPILLER** in his official capacity:  (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff.

If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a

true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Stephen C. Williams for further pre-trial proceedings.

Further, this entire matter shall be **REFERRED** to a United States Magistrate for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to Plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7**

**days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: October 31, 2014**

s/ *Michael J. Reagan*
MICHAEL J. REAGAN
CHIEF JUDGE
UNITED STATES DISTRICT COURT